# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Genius Brands International, Inc. Securities Litigation | CV 20-7457 DSF (RAOx) <br><br> Order GRANTING Defendants' Motion to Dismiss (Dkt. 87) |

This case arises out of an alleged scheme by Defendant Genius Brands International, Inc. (Genius or the Company), Andy Heyward and Robert Denton to artificially inflate Genius's stock price. Defendants move to dismiss the Second Amended Complaint (SAC). Dkt. 87 (Mot.).[1] Plaintiffs oppose. Dkt. 92 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is GRANTED.

## I. LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S.

---

[1] The Court agrees with Defendants, Mot. at 6 n.8, 40-41, that the class allegations are improper. The Court appointed Ali Alavi and A Legacy Foundation as Lead Plaintiffs to act as class representatives for a class different from the one alleged in the Second Amended Complaint. The Court has no information from which it could determine whether they would qualify as Lead Plaintiffs for this expanded class.

89, 94 (2007) (per curiam). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 557). A complaint must "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued F

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief. Iqbal, 556 U.S. at 679 (simplified). As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a).

### B. Securities Fraud Complaints and Rule 9(b)

"Securities fraud complaints face heightened pleading requirements." In re Nektar Therapeutics Sec. Litig., 34 F.4th 828, 835 (9th Cir. 2022). At the pleading stage, Section 10(b) and Rule 10b-5 claims must satisfy the requirements of the Private Securities Litigation Reform Act (PSLRA) and Federal Rule of Civil Procedure 9(b). Id. Under Rule 9(b), fraud claims must be pleaded with particularity. Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009). "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction." In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). A plaintiff must include "an

2

account of the time, place, and specific content of the false representations" at issue. Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quotation marks omitted). Fraud allegations must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).

Rule 9(b)'s particularity requirement "applies to all elements of a securities fraud action." Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 605 (9th Cir. 2014). The PSLRA, 15 U.S.C. § 78u-4(b)(1), "imposes additional specific pleading requirements, including requiring plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter." In re Rigel Pharms., Inc. Sec. Litig., 697 F.3d 869, 877 (9th Cir. 2012). In order to allege falsity properly, "a securities fraud complaint must . . . specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." Id. (simplified). In addition, in order to "adequately plead scienter under the PSLRA, the complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. (simplified).

## II. DISCUSSION[2]

### A.   Rule 10b-5(b): Untrue Statement or Omission of Material Fact

Section 10(b) of the Securities Exchange Act makes it "unlawful for any person, directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j. Rule 10b-5, implementing Section 10(b), states:

---

[2] Defendants' unopposed request for judicial notice of Genius's public filings, public reports, and stock price is GRANTED. See dkt. 87-2.

3

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

### 1. False Statement or Omission

To establish a claim under Section 10(b) and SEC Rule 10b-5, a plaintiff must allege with specificity: "(1) a misrepresentation or omission (2) of material fact (3) made with scienter (4) on which the plaintiff justifiably relied (5) that proximately causes the alleged loss." Binder v. Gillespie, 184 F.3d 1059, 1063 (9th Cir. 1999). Under the heightened pleading standard of the PSLRA, "complaints alleging misrepresentations or omissions under 10b-5 must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" Glazer Cap. Mgmt., LP v. Magistri, 549 F.3d 736, 741 (9th Cir. 2008).

To establish falsity, a plaintiff "must demonstrate that a particular statement, when read in light of all the information then available to the market, or a failure to disclose particular information, conveyed a false or misleading impression." In re Convergent Technologies Sec. Litig., 948 F.2d 507, 512 (9th Cir. 1991). "Whether

4

its allegations concern an omission or a misstatement, a plaintiff must allege materiality." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1009 (9th Cir. 2018). "[A] misrepresentation or omission is material if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." Id. (quoting Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005)) (alteration in original).

Section 10(b) and Rule 10b-5(b) "do not create an affirmative duty to disclose any and all material information[;]" rather, "[d]isclosure is required under these provisions only when necessary 'to make . . . statements made, in light of the basic circumstances under which they were made, not misleading." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44 (2011) (citing 17 C.F.R. § 240.10b-5(b)). In order to be misleading, an incomplete statement "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002); see also Reese v. Malone, 747 F.3d 557, 570 (9th Cir. 2014) ("By omitting information regarding BP's detection of high corrosion levels, [defendant] affirmatively created an 'impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]."), overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc., 856 F.3d 605, 619 (9th Cir. 2017).

"By voluntarily revealing one fact about its operations, a duty arises for the corporation to disclose such other facts, if any, as are necessary to ensure that what was revealed is not 'so incomplete as to mislead.'" FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1305 (11th Cir. 2011) (quoting Backman v. Polaroid Corp., 910 F.2d 10, 16 (1st Cir. 1990) (en banc)). "[E]ven absent a duty to speak, a party who discloses material facts in connection with securities transactions assumes a duty to speak fully and truthfully on those subjects." Id. (alteration in original) (quoting In re K-tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 898 (8th Cir. 2002)). "[A] defendant may not deal in half-truths." Id. (quoting First Va. Bankshares v. Benson, 559 F.2d 1307,

5

1314 (5th Cir. 1977)).  But there is no duty to correct "[s]tatements regarding past events [that] contain no implicit prediction that those events or conditions will continue in the future." In re Splash Tech. Holdings, Inc. Sec. Litig., 160 F. Supp. 2d 1059, 1078 (N.D. Cal. 2001).

      a.      PennyStocks Omissions

Plaintiffs allege Genius's March 11 Form 8-K, March 30 Form 10-K, and May 17 Form 10-Q were false or misleading because Genius failed to disclose that it had engaged PennyStocks to promote the Company's stock price.

           (1)    March 11 Statement

Plaintiffs assert Genius's representation in its SPA (between Genius and purchasers of convertible notes, including Heyward) attached to the March 11, 2020 Form 8-K was false because Genius paid PennyStocks to disseminate favorable information about Genius. SAC ¶¶ 187-88.  The relevant language from the March 11, 2020 SPA states:

> The Company has not, and to its knowledge no one acting on its behalf has, (i) taken or may take, directly or indirectly, any action designed to cause or to result, or that would reasonably be expected to cause or result, in the stabilization or manipulation of the price of any security of the Company to facilitate the sale or resale of any of the Securities, (ii) other than the Agent (as defined in Section 3(ee)), sold, bid for, purchased, or paid any compensation for soliciting purchases of, any of the Securities, or (iii) other than the Agent, paid or agreed to pay to any person any compensation for soliciting another to purchase any other securities of the Company.

March 11 SPA at 94; see also SAC ¶ 86.  Plaintiffs claim this statement was false or misleading because at the time the statement was made, Genius had engaged PennyStocks to disseminate favorable information about Genius's shares, and PennyStocks warned during a promotional campaign, that "the trading volume and price of the securities of each Profile Issuer will likely increase significantly [and] [w]hen the

6

Campaign ends, the volume and price of the Profiled Issuer will likely decrease significantly." SAC ¶ 188 (alterations in original). Plaintiffs assert, therefore, that "payment for such services constitutes, at best, 'compensation for soliciting purchases, of any' Genius shares and/or 'pay[ing] any Person any compensation for soliciting another to purchase any other securities of the Company.' At worst, it constitutes an 'action designed to cause or to result in the stabilization or manipulation of the price of any security of the Company.'" Id. (alteration in original).

In its order granting Defendants' motion to dismiss the First Amended Complaint, the Court determined that Plaintiffs did "not identify anything Genius did to stabilize or manipulate its stocks" and Plaintiffs did not include any "allegations that anything in the PennyStocks article was misleading." Dkt. 81 (Order) at 13. In the SAC, Plaintiffs allege the PennyStocks articles were misleading because they omitted that PennyStocks received compensation from Genius and omitted that PennyStocks permitted Genius to "review, edit, and approve articles before PennyStocks disseminates them." SAC ¶ 188.

Plaintiffs contend the SAC now alleges the PennyStocks articles were misleading because they failed to disclose that Genius paid PennyStocks for the favorable coverage and failed to disclose that Genius was permitted to review the articles before they were disseminated. Opp'n at 11. Plaintiffs' argument fails for two reasons. First, Plaintiffs still fail to allege that anything in the PennyStocks articles themselves was false or misleading. For example, Plaintiffs do not allege any facts about the substance of the PennyStocks articles that in conjunction with the disclaimers Plaintiffs allege PennyStocks omitted would have "significantly altered the 'total mix' of information made available.'" Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988).[3]

---

[3] To the extent Plaintiffs rely on CW1 to bolster their claim, see Opp'n at 8 n.9, the Court previously considered the allegations that CW1 "proofread" an unidentified article at an unidentified time that was allegedly posted on PennyStocks at a subsequent time, and determined that the allegations were

7

Second, PennyStocks was under no duty to disclose Genius as the source of its funding. See Stephens v. Uranium Energy Corp., No. H-15-1862, 2016 WL 3855860, at *23 (S.D. Tex. July 15, 2016).

The March 11 Statement still does not support Plaintiffs' Section 10(b) and SEC Rule 10b-5 claims.

(2) March 30 Form 10-K

Plaintiffs allege Genius's representation in its March 30, 2020 Form 10-K stating, "Our stock price may be subject to substantial volatility, and stockholders may lose all or a substantial part of their investment" was false or misleading because Genius did not disclose that it had engaged PennyStocks, which could and did have an impact on the stock price. SAC ¶¶ 195, 197. In particular, Plaintiffs argue the March 30 Form 10-K was misleading because it omitted "the materialized risk that PennyStocks' promotions would create for Genius' stock." Opp'n at 13. The Court agrees with Defendants that Plaintiffs have not adequately pleaded that any risk had "materialized." Without knowledge that a "materialized" risk had occurred, the disclosures here were about potential future risks. See Siracusano v. Matrixx Initiatives, Inc., 585 F.3d 1167, 1181 (9th Cir. 2009) ("[T]he passage in the Form 10-Q speaks about the risks of product liability claims in the abstract, with no indication that the risk 'may already have come to fruition.'"), aff'd, 563 U.S. 27 (2011); In re Alphabet, Inc. Sec. Litig., 1 F.4th 687, 704 (9th Cir. 2021) ("[T]he complaint plausibly alleges that Alphabet's warning in each Form 10-Q of risks that 'could' or 'may' occur is misleading to a reasonable investor *when Alphabet knew that those risks had materialized.*" (emphasis added)). For example, Plaintiffs allege nine dates on which PennyStocks published a report on Genius, yet none of the dates

---

insufficient. See Order at 2-3. Plaintiffs plead no additional facts that alter the Court's conclusion.

8

Plaintiffs allege were near the time Genius filed its March 30 Form 10-K. See SAC ¶ 64.[4]

The March 30 Statement does not support Plaintiffs' Section 10(b) and SEC Rule 10b-5 claims.

### b. COVID-19 Statements

Plaintiffs argue that the statements Genius made publicly about Genius's resilience to COVID-19 were contradicted by the statements it made in public filings. See, e.g., SAC ¶ 94. With respect to the May 18 Q1 2020 10-Q, Plaintiffs allege Genius publicly disclosed that the COVID-19 outbreak "could have a significant adverse impact on our business, which could be material. . . . the Company's management cannot at this point estimate the impact of the outbreak on its business." Id. Plaintiffs allege this statement was contradicted by a June 8 Shareholder Letter in which Genius disclosed that it did "not anticipate being impacted by COVID-19" and believed the Company would "see robust and accelerated revenue growth coming forth in this arena for the foreseeable future." Id. Defendants argue the COVID-19 Statements were forward-looking and therefore immaterial under the PSLRA's safe harbor. Mot. at 19-21. The Court agrees.

The PSLRA's "safe harbor" provision "is designed to protect companies and their officials from suit when optimistic projections of growth in revenues and earnings are not borne out by events." In re Quality Sys., Inc. Sec. Litig., 865 F.3d 1130, 1142 (9th Cir. 2017). The safe harbor applies only to "forward-looking statements," which include:

---

[4] For the same reasons, Plaintiffs' claims about the May 17, 2020 Form 10-Q are not actionable. Moreover, Genius had no duty to update the May 17 Form 10-Q. "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." Basic, 485 U.S. at 239 n.17. "Section 10(b) of the Exchange Act and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." In re Galectin Therapeutics, Inc. Sec. Litig., 843 F.3d 1257, 1274 (11th Cir. 2016).

9

> (A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;
>
> (B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;
>
> (C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;
>
> (D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C)[.]

15 U.S.C. § 78u-5(i)(1).  A statement that goes "beyond the articulation of 'plans,' 'objectives,' and 'assumptions' and instead contains an express or implied 'concrete' assertion concerning a specific 'current or past fact[ ]'" falls outside of the statutory definition.  Wochos v. Tesla, Inc., 985 F.3d 1180, 1191 (9th Cir. 2021) (quoting Quality Sys., 865 F.3d at 1142, 1144).  "[A] concrete factual assertion about a specific present or past circumstance goes beyond the assertion of a future goal, and beyond the articulation of predicate assumptions, because it describes specific, concrete circumstances that have already occurred."  Id. at 1192.

When a statement falls within the statutory definition for "forward-looking," the safe harbor applies if either one of two conditions is present.  Id. at 1149 (reiterating that the following prongs are disjunctive).  First, a forward-looking statement accompanied by sufficient cautionary language is protected.  Id. at 1141.  Cautionary language is sufficient when it identifies "important factors that could cause actual results to differ materially from those in the forward-looking statement."  15 U.S.C. § 78u-5(c)(1).  Second, a forward-looking

10

statement "made without actual knowledge that it is false or misleading" is protected. Quality Sys., 865 F.3d at 1141.

The Court finds that the COVID-19 Statements are forward-looking statements. Importantly, Plaintiffs fail to allege that the COVID-19 Statements were made with the knowledge that they were false or misleading when made because, as the Court previously found in the Order, "The impact Covid-19 would have . . . could not have been predicted" and "Plaintiffs do not state any facts to suggest Defendants had knowledge the rest of the world did not." Order at 16. Moreover, to the extent Plaintiffs argue the November 10-Q operates as a corrective disclosure because it (1) disclosed that COVID-19 threatened to impact Mattel, Inc., Genius's partner in its merchandizing venture, and (2) Genius was "starting to see some negative impact from COVID-19," see Opp'n at 18-19, the Court disagrees for two reasons. First, Plaintiffs do not adequately allege that Genius knew about COVID-19's potential impact on Mattel or how that would in turn impact Genius. Second, that Genius eventually started to see the impact of COVID-19 does not render Genius's prior statements false or misleading at the time they were made. As the Court has already discussed, and as the parties undoubtedly know, COVID-19 presented ever-evolving challenges.

The COVID-19 Statements do not support Plaintiffs' Section 10(b) and SEC Rule 10b-5 claims.[5]

### c. Possible Merger Statements

Plaintiffs allege that on June 3, 2020, Insider Financial published an article titled, "Will Netflix or Disney Buy Genius Brands International (NASQAQ: GNUS)?" SAC ¶ 113. Plaintiffs contend that the article caused Genius shares to increase by 42%. Id. Plaintiffs argue that to "maintain the price inflation by that article, Defendants made a series of statements . . . designed to mislead the market about

---

[5] For the remaining statements alleged in paragraph 94, Plaintiffs fail to allege how they were misleading. See SAC ¶ 94.

whether a buyout was coming." Opp'n at 19. In particular, Plaintiffs allege that Defendants misrepresented (1) details about Margaret Loesch, a Genius Board Member, who worked at Fox Kids prior to its sale to Walt Disney Company; (2) Genius "tweeted" a June 21, 2020 Insider Financial report that again speculated on a sale of Genius; and (3) Genius issued a "Key Business Update" that, taken in context, led investors to believe Genius would announce a buyout. See Opp'n at 20-23.[6]

(1) Loesch Statements

Plaintiffs claim Genius and Heyward made five false or misleading statements between June 5, 2020 and June 18, 2020 regarding Margaret Loesch, a Genius Board Member (the Loesch Statements). See Opp'n at 20. In a June 5, 2020 shareholder letter, Genius "announced the engagement of the most successful programming executive in the history of children's television, Margaret Loesch, as Executive Chairman of Kartoon Channel!" SAC ¶ 120. The June 5 Shareholder Letter continued, "Loesch was the founding president and CEO of Fox Kids Networks Worldwide, growing the channels across all metrics, where it was eventually sold to the Walt Disney Company for $5.5 billion." Id. Similarly, in the June 8 Statement, Genius stated, "Margaret was founding CEO of FOX Kids, and built it from zero to the most successful and profitable kids program service, and what was eventually sold to the Walt Disney Company for $5.5 billion dollars." Id. ¶ 202.

Plaintiffs allege the statements about Loesch were false or misleading because Genius failed to disclose (1) that she left Fox Kids three years before the sale to Disney which "gave investors a misleading impression that she was the executive who executed such a transaction" and (2) that she was operating in an advisory role and not an operational one. Id. ¶ 203. Defendants argue that the Loesch Statements are not false or misleading because they are true – that is,

---

[6] Defendants do not dispute that the Insider Financial re-tweet is false or misleading, only that Plaintiffs fail to plead loss causation. The Court, therefore, addresses the Insider Financial re-tweet below.

12

Loesch was experienced in overseeing Fox Kids and built it into a successful children's program service. Mot. at 21-22; see also dkt. 93 at 10 ("Plaintiffs offer no response to Defendants' point that . . . the Ms. Loesch . . . statements were *true*."). Plaintiffs do not address Defendants' argument regarding Loesch's success at Fox Kids. In any event, read in context, the Loesch Statements make clear that (1) Loesch helped shape Fox Kids and (2) Fox Kids was "eventually" sold to the Walt Disney Company. The Loesch Statements do not intimate that *she* was engaged in or played a role in the sale, nor do the Loesch Statements state or imply anything regarding a potential merger related to Genius. See Brody, 280 F.3d at 1006 ("If the press release had affirmatively intimated that no merger was imminent, it may well have been misleading. The actual press release, however, neither stated nor implied anything regarding a merger.").

The Loesch Statements do not support Plaintiffs' Section 10(b) and SEC Rule 10b-5 claims.

(2) July 2, 2020 – "Key Business Development" Press Release

Plaintiffs argue the July 2 Press Release announcing a "Key Business Development" set for July 6 was false or misleading because "given the context of the days preceding this announcement . . . investors were led to believe, and did in fact believe, that an announcement related to Disney or Netflix was forthcoming, when it was not." SAC ¶ 215. Plaintiffs further argue that this "vague announcement significantly boosted the Company's stock price." Id. ¶ 249. As with the Loesch Statements, Defendants contend that the July 2 Press Release touting a "Key Business Development" was true because on July 6 Genius announced a joint venture with POW! Entertainment regarding Stan Lee's intellectual property. Id. ¶¶ 155, 215-18. The Court agrees that the July 2 Press Release is either true or inactionable. At best, touting a "Key Business Development" constitutes a vague statement of optimism that is not "capable of objective verification." Or. Pub. Emps. Ret. Fund, 774 F.3d at 606. Moreover, "Key Business Development" is "simply too vague to

constitute a material statement of fact." Searls v. Glasser, 64 F.3d 1061, 1066 (7th Cir. 1995).

Plaintiffs point to the fact that certain alleged investors believed the July 2 Press Release implied Genius would announce a merger or "buy out" on July 6. See SAC ¶¶ 25, 133, 249. However, mere speculation that Genius would announce a "buy out" on July 6 does not satisfy the heightened pleading standards under the PSLRA.

The July 2 Press Release does not support Plaintiffs' Section 10(b) and SEC Rule 10b-5 claims

### d. Shaquille O'Neal Statement

On June 27, 2020, an Instagram user who apparently had seen information released by Genius stating that "Arnold Schwarzenegger [was] to become [a] major investor in Genius," suggested having Shaquille O'Neal as an investor "like Arnold." SAC ¶¶ 139, 141-142, 212. Heyward responded, "Keep watching [followed by three fireworks emojis] I can't discuss nondisclosed material events *until* they happen . . . ." Id. ¶¶ 142, 212. Plaintiffs allege the statement was false or misleading because it implied O'Neal would be investing in Genius, or gave the user the impression that the user was learning about a "non-disclosed material event." Id. ¶ 213. But Heyward declined to comment. See Lopes v. Fitbit, Inc., No. 18-cv-06665-JST, 2020 WL 1465932, at *9 (N.D. Cal. Mar. 23, 2020), aff'd, 848 F. App'x 278 (9th Cir. 2021). In any event, Plaintiffs acknowledge that an announcement confirming O'Neal's involvement with Genius was made several months later. SAC ¶¶ 30, 166, 252.

The O'Neal Statement does not support Plaintiffs' Section 10(b) and SEC Rule 10b-5 claims

### 2. Loss Causation

Defendants argue Plaintiffs do not adequately plead loss causation. Under the PSLRA, "the plaintiff shall have the burden of proving that the act or omission of the defendant . . . caused the loss for

14

which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4).[7] "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 810 (2011) (quotation marks omitted). The PSLRA "makes clear Congress' intent to permit private securities fraud actions for recovery where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The complaint must plausibly allege that Genius's share price fell "after the truth became known"; alleging "purchase price inflation alone [is not] sufficient." Id. at 37.

### a. Schwarzenegger Statement

The Court previously determined that a June 15 Statement about Schwarzenegger potentially supported Plaintiffs' claim, but that they did not "tie the June 15 Statement to an inflation of Defendants' stock and point to no moment where the truth about these statements was revealed, after which time the stock's price decline." Order at 22. Plaintiffs allege the August 10-Q constitutes a corrective disclosure because it revealed that Schwarzenegger would not be investing capital into Genius and would only be receiving warrants. The Court disagrees. The August 10-Q confirmed that Schwarzenegger would receive compensation for his contributions to Genius. Opp'n at 39. But Genius had previously announced that he had "elected to receive warrants to purchase shares of the Company's common stock as an advance against his profit participation in the show." Mot. at 25 (quoting dkt. 87-9 (Ex. 6) at 55)). Plaintiffs have not rectified the deficiency identified in the FAC.

### b. Rainbow Rangers Statements

Plaintiffs assert that the March 17 and March 20 statements that Nickelodeon had increased the airing of Rainbow Rangers to 26

---

[7] The Court analyzes loss causation for the class described in the SAC, but there are no allegations relating to the specific loss, if any, of the Lead Plaintiffs during the expanded class period.

15

showings a week was false because "at the time the statement was made, Rainbow Rangers did not air 26 times per week." SAC ¶ 190. In support of their assertion, Plaintiffs attached to their SAC a schedule of the dates and times Rainbow Rangers was scheduled to air from March 16, 2020 through March 22, 2020, which Plaintiffs allege demonstrates the show aired only 12 times on Nick Jr., and from March 18, 2020 through March 24, 2020, which Plaintiffs allege demonstrates the show aired only 13 times. Id. ¶¶ 20 & n.6; see also dkt. 82-1. Defendants do not dispute the inaccuracy of the Rainbow Rangers Statements, but argue Plaintiffs have not alleged loss causation. Mot. at 18-19. The Court agrees. Plaintiffs fail to allege any meaningful increase in the Company's stock price after the Rainbow Rangers Statements.

        c.      Insider Financial Tweet

Defendants assert Plaintiffs have not pleaded loss causation with respect to the June 22 Insider Financial re-tweet because the price of the Company's stock did not meaningfully increase. Mot. at 25-26. The Court agrees.

Plaintiffs' claims under Section 10(b) and SEC Rule 10b-5 are DISMISSED.

**B.**    **Rule 10b-5(a) and (c): Market Manipulation**

Defendants assert Plaintiffs fail to state a claim under subsection (a) or (c) because they have not alleged any deceptive or manipulative act except that Defendants engaged in a scheme to inflate the Company's stock price "with the same false or misleading public statements" that Plaintiffs rely on for their Rule 10b-5(b) claim. Mot. at 34.

To allege a violation of Rule 10b-5(a) and (c), 17 C.F.R. § 240.10b-5(a) and (c), a plaintiff must allege the same elements as a Rule 10b-5(b) claim, except that plaintiff's scheme liability claim cannot be based solely on false or misleading statements, but must instead involve deceptive conduct "beyond those misrepresentations or omissions." WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc., 655 F.3d 1039, 1057 (9th Cir. 2011), abrogated on other grounds by Lorenzo v.

16

Sec. & Exch. Comm'n, 139 S. Ct. 1094 (2019). To plead a scheme liability claim, a plaintiff must allege: "(1) the defendant committed a deceptive or manipulative act in furtherance of the alleged scheme; (2) scienter; (3) a connection between the alleged deceptive or manipulative act and the purchase or sale of a security; (4) reliance upon the alleged deceptive or manipulative act; (5) economic loss; and (6) loss causation." Rabkin v. Lion Biotechnologies, Inc., No. 17-cv-02086-SI, 2018 WL 905862, at *16 (N.D. Cal. Feb. 15, 2018); see also New York City Emps.' Ret. Sys. v. Berry, 616 F. Supp. 2d 987, 996 (N.D. Cal. 2009). Scheme liability allegations are subject to Rule 9(b)'s heightened pleading standards. In re Bank of Am. Corp., No. 09-MD-02014 JSW, 2011 WL 740902, at *6 (N.D. Cal. Feb. 24, 2011) (citing ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 498 F.3d 87, 102 (2d Cir. 2007)).

As noted above, Plaintiffs did not establish the elements of their Rule 10b-5(b) claim. They therefore did not adequately plead a violation of Rule 10b-5(a) and (c). Plaintiffs' claims under Rule 10b-5(a) and (c) are DISMISSED.

## C.  Allegations Against Denton

Defendants argue that Plaintiffs make no individualized allegations against Denton despite the Court's prior dismissal on the same grounds.

Plaintiffs argue the "scheme itself" evinces scienter. Opp'n at 25-26. In addition, Plaintiffs argue that scienter is inferred because Denton oversaw and reviewed the PennyStocks articles. Id. at 25. Plaintiffs' argument fails for two reasons. First, the Court already determined that Plaintiffs failed to plead scheme liability. Second, as for Plaintiffs' claim that scienter is inferred because Denton oversaw and reviewed the PennyStocks articles, Plaintiffs' argument is not supported by the SAC. Indeed, the SAC does not explicitly state that

17

Denton edited or reviewed PennyStocks' articles, only that a CW1 "proofread" a single article. See SAC ¶¶ 61, 65, 76.[8]

### III. CONCLUSION

Defendants' motion to dismiss is GRANTED. After the Court's adverse comments about the Amended Complaint, Plaintiffs filed a prolix 289-paragraph, 84-page Second Amended Complaint that violates Rule 8. See McHenry v. Renne, 84 F.3d 1172, 1179-80 (9th Cir. 1996) (affirming dismissal of complaint that "is fifty-three pages long, and mixes allegations of relevant facts, irrelevant facts, political argument and legal arguments in a confusing way."); see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011) ("While 'the proper length and level of clarity for a pleading cannot be defined with any great precision,' Rule 8(a) has 'been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling.") (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed.2010)); Salazar v. County of Orange, 564 F. App'x 322, 322-23 (9th Cir. 2014) (district court did not abuse its discretion in dismissing complaint with prejudice when plaintiffs were permitted to replead twice). And even with an improperly expanded class period, Plaintiffs' claims still fail.

For the reasons stated above and the additional reasons stated by Defendants, the Second Amended Complaint is dismissed with prejudice.

IT IS SO ORDERED.

Date: July 15, 2022

_Dale S. Fischer_
Dale S. Fischer
United States District Judge

---

[8] Plaintiffs make the same arguments with respect to Heyward. See Opp'n at 25-30. For the reasons Plaintiffs' arguments against Denton fail, so does their argument against Heyward.

18